J. S53034/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DORIS PULLETT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CHARLES PULLETT, | : | No. 3260 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered September 19, 2016,
in the Court of Common Pleas of Philadelphia County
Family Court Division at No. June Term, 2006, No. 8419

BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 25, 2017**

Charles Pullett ("Husband") appeals the order of the Court of Common Pleas of Philadelphia County that ordered him to pay Doris Pullett ("Wife") $48,405.38 which represented Wife's share of equitable distribution; to pay Wife's present counsel $10,481.25 for counsel fees, costs, and expenses; to pay alimony to Wife in the amount of $1,000 per month for four years or until the death of either party, or upon the remarriage or cohabitation of Wife; and to obtain an insurance policy on his life designating Wife as beneficiary for a period terminating with the fulfillment of his alimony obligations.  We quash.

The trial court recounted the following facts and procedural history:

> [T]he parties were married on December 30, 1989.
> They had three children, two of whom are currently
> in their 30's and one of whom is in his 20's.

Husband alone contributed financially to the family, working continuously as a truck driver for various solid waste hauling entities. For the first half of 2006, Husband's gross pay was $37,548.13. Wife remained at home, raising the children and running the household. During the marriage, Husband had two retirement accounts: 1) a 401(k); and 2) an IRA annuity. Husband received funds from a union settlement, the majority of which the parties agree to be marital property. In addition, the parties had a checking account and a savings account. All financial correspondence was sent to Husband's mother's home and not to the marital residence; Wife was not privy to the ongoing financial status of the accounts. The parties never owned the marital residence, but rented the entire time they lived together as a family. Nor did they own any other real property.

Husband testified that the standard of living during the marriage consisted of the family living together and his taking care of them. The family went on a vacation while Husband worked. There never was more than $5000 in savings. Wife testified that Husband "paid the bills" and that she and the children went on one family vacation.

Husband testified the parties continued to live together as long as they did as a married couple because he felt that he had obligations to Wife. Wife testified that during the marriage Husband went out a "lot" and that he was "seeing someone else." Wife also testified the [sic] Husband was verbally abusive and at times was physically abusive.

After separation, Wife obtained employment as a care assistant at a senior living facility, where she remained so employed until she was laid off in February 2016. At the time of termination, Wife earned approximately $30,577 per year. Wife's maximum entitlement to unemployment compensation benefits for the period Feb. 14, 2016 through February 11, 2017 is $8,258. Wife had received post-separation support from Husband of

$1,420 per month (Wife and one child) and currently receives $1050 per month (Wife only). Wife has a post-separation 401(k) account, whose value she approximated to be $1000, in which she was not fully vested at the time of the trial.

The documentary and testimonial evidence established the following values for the four primary marital assets: 1) Husband's 401(k) account valued at $23,105.63 as of 7/1/07, the closest date to the time of separation supplied by Husband, 2) Husband's IRA account valued at $45,000 as of 3/31/06, 3) union settlement of $11,410 (pre-tax), and 4) Wells Fargo checking account balance of approximately $3,000.

The salient procedural events in the course of this litigation, as gleaned from the docket report, are as follows:

June 7, 2006 - Complaint in divorce filed by Wife.
July 14, 2006 - Answer and counterclaim filed by Husband.
. . . .
June 12, 2012 - Order approving grounds for divorce.
. . . .
June 15, 2015 - Master's report filed.
. . . .
July 6, 2015 - Husband's praecipe for trial *de novo.*
. . . .
Sept. 19, 2016 - Trial *de novo* conducted and Order filed.

In his concise statement of errors complained of on appeal, filed pursuant to Pa.R.A.P. 1925(b), Husband raises 17 discrete issues.

Trial court opinion, 1/10/17 at 1-4 (footnote and citations to the record omitted).

Before stating the issues raised by appellant on appeal, this court notes that the trial court's listing of the salient procedural events in the course of this litigation did not mention the filing of the divorce decree. A review of the record reveals that no divorce decree was ever filed. In an order dated June 21, 2012, the trial court held that a divorce decree would be entered following resolution by the Permanent Master of all claims related to equitable distribution. After the Permanent Master filed his report, appellant praeciped for a trial *de novo*. As a result, the claims for equitable resolution were not resolved until after the trial court heard the matter. On September 19, 2016, the trial court entered the equitable distribution order from which Husband now appeals. No divorce decree, however, was entered.

It is well-settled law in this Commonwealth that a pre-divorce decree that distributes marital property is interlocutory and cannot be reviewed until it has been rendered final by entry of a divorce decree. *See Wilson v. Wilson*, 828 A.2d 376 (Pa.Super. 2003).

As there is no divorce decree, there is no final appealable order. Accordingly, this court must quash appellant's appeal.

Appeal quashed.

J. S53034/17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2017